Adren LOPEZ, Plaintiff,

v.

Capt. D.L. REYNOLDS, Lt. D. Ryan, Sgt.
J. Rich, C.O. J. Moss, C.O. R. Murphy,
C.O. D. Knapp, and C.O. J. Brewer, in
their Individual and Official Capacities,
Defendants.

No. 95–CV–904T (H).

United States District Court,
W.D. New York.

Dec. 2, 1997.

## DECISION and ORDER

TELESCA, District Judge.

Plaintiff, Adren Lopez, formerly a prisoner in the Southport Correctional Facility, filed this action *pro se* seeking relief under 42 U.S.C. § 1983, claiming that his constitutional rights were violated by the defendants' alleged excessive use of force. Defendants moved for summary judgment, arguing that plaintiff had failed to state a claim for any constitutional deprivation and that the defendants were entitled to qualified immunity. This case was referred to Magistrate Judge Carol E. Heckman for pretrial matters and to hear and report on dispositive motions pursuant to 28 U.S.C. § 636(b)(1). On October 7, 1997, Magistrate Judge Heckman issued a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), in which she recommended that the defendants' motion for summary judgment be granted and that the case be dismissed.

No objections have been filed to Magistrate Heckman's Report and Recommendation. Having reviewed the Report and Recommendation, I find it to be in accord with the record before me and the law.

WHEREFORE, the findings in Magistrate Judge Heckman's October 7, 1997 Report and Recommendation are adopted in all respects.

ALL OF THE ABOVE IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. Michael A. Telesca, pursuant to 28 U.S.C. § 636(b)(1), for pretrial matters and to hear and report on dispositive motions. Defendants have filed a motion for summary judgment (Item 21) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, it is recommended that defendants' motion be granted.

## BACKGROUND

On October 18, 1995, plaintiff filed this action seeking declaratory relief and monetary damages pursuant to 42 U.S.C. § 1983. He claims that on September 1, 1995, while he was incarcerated at the Southport Correctional Facility maintained by the New York State Department of Correctional Services ("DOCS"), Correction Officers Moss, Brewer and Knapp and Correction Sergeant Rich subjected plaintiff to "malicious and sadistic use of force as a means of retaliation for filing complaints with government officials and for signing an affidavit of another prisoner in support of his petition to the Courts" (Item 1, ¶ 18). He claims that Lieutenant Ryan and Captain Reynolds witnessed the conduct of the other defendants and took no action to prevent (*id.,* ¶ 13).

The following facts are not in dispute.[1] On September 1, 1995, at approximately 1: 15 p.m., plaintiff was being escorted by Moss, Brewer and Knapp to a Tier III disciplinary hearing when plaintiff requested to be returned to his cell. Plaintiff was in leg iron and handcuff restraints. Upon arrival at plaintiff's cell, Moss removed plaintiff's right leg iron. Plaintiff refused to comply with Moss's order to step back so that the left leg iron could be removed. Moss then lifted plaintiff's leg to remove the left leg iron. Plaintiff turned and spit in Moss's face. Plaintiff's cell door was then secured. Plain-

---

1. Plaintiff has not responded to defendants' summary judgment motion. Fed.R.Civ.P. 56(e) provides as follows:

 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment,

 if appropriate, shall be entered against the adverse party.

 In addition, defendants have submitted a "Statement of Undisputed Facts Pursuant to Local Rule 56" (Item 16). Under Rule 56 of the Local Rules of Civil Procedure for the Western District of New York, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

tiff refused to allow the officers to remove his handcuffs (Item 24, §§ 1–6). Moss filed an inmate misbehavior report about this incident, charging plaintiff with various disciplinary rule violations (*see* Item 23, Ex. A). The misbehavior report was also signed by Knapp, Brewer and Rich. The record before the court does not reflect the disposition of those charges.

Approximately 20 minutes later, Sergeant Rich and Captain Reynolds went to plaintiffs cell to retrieve the handcuffs. Plaintiff put his arms and wrists through the cell hatch. Rich removed the right cuff. Plaintiff then grabbed Rich's arm and attempted to pull him toward the cell. At the same time, plaintiff threw a cup of "unknown liquid smelling of urine" on Rich (Item 23, Ex. B). The liquid struck Rich on both hands and arms and on his uniform shirt, pants, belt and boots. The key to the handcuffs broke off, and bolt cutters had to be used to remove the cuffs (*id.; see also* Item 24, §§ 7, 8). Rich filed a misbehavior report about this incident (*see* Item 23, Ex. B). The report was also signed by Reynolds and Ryan. Again, the record before the court does not reflect the disposition of the charges set forth in the misbehavior report.

At approximately 2:00 p.m. on September 1, 1995, plaintiff was examined by medical staff in his cell. He complained of pain in his left upper arm, shoulder and wrist. There was no bruising, swelling or deformity, and plaintiff had full range of motion. There was tenderness of the left wrist at the base of the thumb, with limited range of motion of the wrist. Plaintiff was given oral analgesic for the pain and was advised to keep his left wrist elevated and to apply cold compresses (Item 24, Ex. C, p. 1; *see also* Medical Report of John W. Alves, M.D., attached to Item 25).

Plaintiff was seen again by nursing staff on September 2, 1995, and was observed wearing a self-made sling on his left arm. On September 3, 1995, nursing staff observed slight swelling of plaintiffs left hand at the base of the index finger, but no swelling of the wrist or gross deformity was observed. On September 6, 1995, plaintiff was observed by Dr. Alves. Southport's Health Services Director. Plaintiff's left wrist was without soft tissue swelling. His left elbow showed tenderness to palpation, but his elbow and shoulder had full range of motion and the neuro-vascular status of his left upper extremity was intact. Dr. Alves authorized an x-ray of plaintiff's left elbow, which was taken on September 13. The x-ray showed no evidence of fracture, dislocation or joint effusion (*id.*).

On September 22, 1995, plaintiff was examined again by Dr. Alves. Plaintiff stated that his left elbow pain had resolved, but he complained that his left thumb and fifth finger tingled. He had full range of motion in his left wrist, and there was no evidence of neuro-vascular compromise (*id.*).

In his unverified complaint, plaintiff alleges that defendants' conduct "denied [him] . . . his First, Eighth & Fourteenth Amendment Rights" (Item 1, ¶ 17). Defendants move for summary judgment on the following grounds:

1. Plaintiff has failed to meet his burden to establish any triable issues of fact as to whether defendants' conduct meets the standards for cruel and unusual punishment or retaliation for the exercise of a protected right;

2. Defendants are entitled to qualified immunity; and,

3. Plaintiff has failed to show that defendants violated DOCS directives on the use of physical force.

These grounds are discussed in turn below.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach*

*Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986).

Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" in its unsworn pleadings to dispute the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *Higgins v. Artuz,* 1997 WL 466505, at *3 (S.D.N.Y. August 14, 1997). Thus, where the movant's papers give the opposing party "easily comprehensible notice" of the possible consequences of not replying to the motion, and the party does not provide a response to the motion, the court may consider as undisputed the facts set forth in the moving party's affidavits, and may enter judgment in favor of the movant. *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (citing *Timms v. Frank,* 953 F.2d 281, 285 (7th Cir.), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992)).

As explained by the Second Circuit in the *Champion* case:

> The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute "show that the moving party is entitled to a judgment as a matter of law."

*Champion v. Artuz, supra,* 76 F.3d at 486 (quoting Fed.R.Civ.P. 56(c)).

In this case, the notice of motion submitted by the Attorney General expressly warned plaintiff that under Rule 56(e) he could not simply rely on his complaint, and that if he did not respond to the motion with an affidavit or other evidence as provided by Rule 56(e), the factual assertions in the State's affidavits would be accepted by this court as true. The notice also advised plaintiff that if he did not respond to the motion with his own evidence, summary judgment could be granted against him, and that if summary judgment were granted, the case would be dismissed and there would be no trial. This statement has been held as "ample to give [plaintiff] the required notice" for entry of summary judgment by default. *Champion v. Artuz, supra.*

Accordingly, since plaintiff has not responded to defendants' summary judgment motion, the facts set forth in defendants' motion papers will be accepted by this court as undisputed. The court now turns to an inquiry as to whether these undisputed facts show that defendants are entitled to summary judgment as a matter of law on each of the grounds relied upon in the motion papers.

## II. Eighth Amendment.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993) (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991), and *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The core inquiry for the court in assessing a prisoner's claim that prison officials subjected him or her to cruel and unusual punishment by using excessive force is whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

An inmate claiming that prison officials subjected him or her to cruel and unusual punishment by the use of excessive force has the burden of establishing both an objective and a subjective component. *Romano v. Howarth, supra,* 998 F.2d at 105. Objectively, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Id.; see also Wilson v. Seiter, supra.* This component is "contextual and responsive to 'contemporary standards of de-

cency.'" *Hudson v. McMillian, supra,* 503 U.S. at 8 (quoting *Estelle v. Gamble, supra,* 429 U.S. at 103). Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, the plaintiff is not required to show that the application of force resulted in serious injury. *Id.* at 9–10.

▇ Subjectively, the plaintiff must show that the defendants acted "maliciously and sadistically to cause harm...." *Hudson v. McMillian, supra,* 503 U.S. at 7; *Romano v. Howarth, supra,* 998 F.2d at 105. To determine whether the defendants acted maliciously, the trier of fact should consider the following factors: the extent of the plaintiff's injuries, the need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response. *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). As stated by the Second Circuit in *Romano v. Howarth:*

> If an evaluation of these factors leads the [trier of fact] to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the [trier of fact] to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

998 F.2d at 105.

In this case, the medical records provide a reasonable basis for a jury to conclude that some injury occurred as a result of the incident. See, *e.g., Corselli v. Coughlin,* 842 F.2d 23, 26–27 (2d Cir.1988) (even if injuries suffered were not permanent or severe, plaintiff may still recover if force used was unreasonable and excessive); *Messina v. Mazzeo,* 854 F.Supp. 116, 133–34 (E.D.N.Y. 1994). However, even if a triable issue remains as to whether plaintiff has established the objective component of his excessive force claim, the following evaluation of the remaining factors set forth in *Whitley v. Albers* demonstrates that "the subjective component of the claim has not been satisfied." *Romano v. Howarth, supra,* 998 F.2d at 105.

▇ The undisputed facts of the September 1, 1995 incident show that plaintiff refused to comply with Moss's order to step back so that the left leg iron could be removed. Knapp and Brewer restrained plaintiff while Moss removed the leg irons. There is no evidence of injury to plaintiff's leg, or any other showing that Moss, Knapp or Brewer used any more force than was reasonably necessary to remove the leg irons and place plaintiff in his cell. Plaintiff's conduct, including his refusal to attend his disciplinary hearing, his refusal to allow the officers to remove his restraints, and spitting in Moss's face, demonstrates a reasonably perceived threat to the maintenance of prison discipline.

▇ As to the incident involving Rich and Reynolds, the undisputed facts show that as Rich was removing plaintiff's handcuffs, plaintiff grabbed Rich by the arm, pulled him toward the cell and threw a cup of urine on him.[2] In doing so, plaintiff caused the handcuff key to break. Rich was required to summon assistance in order to restrain plaintiff so that the handcuffs could be removed with a bolt cutter. It is beyond dispute that plaintiff's conduct created a serious threat to prison security, and the officers' use of force in response to this threat was reasonable under the circumstances.

Accordingly, I find that defendants acted in a good-faith effort to restore and maintain discipline rather than maliciously or sadistically to cause harm. Defendants are therefore entitled to summary judgment dismissing the complaint to the extent it alleges a violation of plaintiff's eighth amendment

---

**2.** In 1996, the New York State Legislature enacted § 240.32 of the New York Penal Law, effective June 5, 1996, making this conduct a class E aggravated felony punishable by an additional prison term of 1–4 years (*see* N.Y.Penal Law §§ 70.00(2)(e), 70.00(3)(b)), or 3–5 years for a second felony offender (*see* N.Y.Penal Law § 70.06(3)(c)).

right to be free from cruel and unusual punishment.

## III. Retaliation.

■ In order to succeed on his § 1983 claim that defendants retaliated against him for exercising a constitutional right, plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the defendants' decision to discipline him. *Graham v. Henderson,* 89 F.3d 75, 79–80 (2d Cir.1996) (citing *Mount Healthy School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). This type of claim has been recognized by the courts as implicating the "substantive component" of the due process clause, and "rest[ing] on the contention that even convicted felons have a right to protection from wholly baseless victimization by those cloaked with the power of the state where the motive is the suppression of constitutionally protected liberties." *Odom v. Keane,* 1997 WL 3262, at *1 (S.D.N.Y. Jan.6, 1997); *see also Graham v. Henderson, supra,* 89 F.3d at 80; *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988).

■ If the plaintiff carries his initial burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff "even in the absence of the protected conduct." *Mount Healthy School District v. Doyle, supra,* 429 U.S. at 287. Thus, even if the disciplinary action was taken for both proper and improper reasons, the action may be upheld if it would have been taken based on the proper reasons alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (citing *Mount Healthy, supra* ); *see also Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984).

As recognized by the Second Circuit, a finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that 'prison officials have broad administrative and discretionary authority over the institutions they manage.'" *Sher v. Coughlin, supra,* 739 F.2d at 82 (quoting *Hewitt v. Helms,* 459

U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983)); *see also Lowrance v. Achtyl, supra,* 20 F.3d at 535. Retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

As explained by the Second Circuit in *Graham v. Henderson:*

> In short, [the plaintiff]'s claim will not survive summary judgment under the *Mount Healthy* test if he does not meet the burden of demonstrating two genuine issues of material fact: (1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct— in other words, that the prison officials' actions were substantially improper retaliation. Assuming [the plaintiff] meets his burden, his claim will still not survive summary judgment under *Mount Healthy* if the defendants meet their burden of showing that there is no genuine issue as to the fact that [the plaintiff] would have received the same punishment even if they had not been improperly motivated.

*Graham v. Henderson, supra,* 89 F.3d at 80.

■ In this case, plaintiff contends that defendants took disciplinary action against him in retaliation for "writing of complaints" and "signing of affidavits" (Item 1, ¶ 15). Although the record contains no documentation to support plaintiff's contention in this regard (such as copies of inmate grievances filed), it is not disputed that plaintiff has a constitutionally protected right to petition for redress of grievances. *See, e.g., Franco v. Kelly, supra; Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987); *see also Lakram v. Coughlin,* 99 F.3d 402, 1995 WL 763017 (2d Cir. December 27, 1995) (unpublished disposition).

However, I find that the affidavits submitted by defendants meet their burden on this motion of showing that they would have taken the same action even if they had not been improperly motivated. Indeed, the undisputed facts show that defendants' actions were taken in direct response to plaintiff's refusal to attend his disciplinary hearing, refusal to

allow for the removal of physical restraints, spitting, and throwing urine. Therefore, even if retaliation was a motive for defendants' use of force, there is no genuine issue as to the fact that defendants would have taken the same action in response to plaintiff's conduct even if retaliation was not a motive.

Accordingly, defendants are entitled to summary judgment dismissing the complaint to the extent that it alleges retaliation for the exercise of a constitutional right.

## IV. Qualified Immunity.

 State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987); *Russell*, *supra*, 910 F.2d at 78; *Gittens v. LeFevre*, 891 F.2d 38, 42 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995).

Thus, a defendant is entitled to summary judgment on qualified immunity grounds when. "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C.Cir. 1986), *quoted in Robison*, *supra*, 821 F.2d at 921, the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon*, *supra*, 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

In this case, as demonstrated by the discussion above, the undisputed facts show that no reasonable trier of fact could conclude that the actions taken by defendants on September 1, 1995 in response to plaintiff's conduct were objectively unreasonable. Defendants are therefore entitled to summary judgment on the ground of qualified immunity.

## V. Violation of DOCS Directives.

 A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements. *See Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983."); *see also Russell v. Coughlin*, 774 F.Supp. 189, 197 (S.D.N.Y.1991), *aff'd in part sub nom. Russell v. Selsky*, 35 F.3d 55 (2nd Cir.1994); *Kingwood v. Coombe*, 1997 WL 323913, at *2 (S.D.N.Y. June 13, 1997). Accordingly, defendants are entitled to summary judgment dismissing the complaint to the extent that it alleges a claim based on defendants' violation of DOCS Directives.

## *CONCLUSION*

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (**Item 21**) be granted, and the case dismissed.

Oct. 7, 1997.